The **PEOPLE** of the State of Colorado, Complainant

v.

Ryan M. **STERN,** Respondent.

No. 08PDJ028.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Jan. 9, 2009.

**560** 

On November 12, 2008, the Presiding Disciplinary Judge ("the Court") held a Sanctions Hearing pursuant to C.R.C.P. 251.18(d). Margaret B. Funk appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Ryan M. Stern ("Respondent") did not appear, nor did counsel appear on his behalf. The Court now issues the following "Report, Decision, and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. *ISSUE*

 Suspension is generally appropriate when a lawyer knowingly fails to perform services, or engages in a pattern of neglect and causes injury or potential injury to a client. Reprimand is generally appropriate when a lawyer knowingly engages in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on their fitness to practice law. Respondent engaged in a pattern of neglect and made multiple misrepresentations to two of his clients. What is the appropriate sanction?

*SANCTION IMPOSED:* **ATTORNEY SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF TWO (2) YEARS.**

### II. *PROCEDURAL HISTORY*

The People filed a Complaint in this matter on March 17, 2008. Respondent failed to file an Answer. The Court granted "Complainant's Motion for Default" on June 25, 2008. Upon the entry of default, the Court deems all facts set forth in the Complaint admitted and all rule violations established by clear and convincing evidence. *People v. Richards*, 748 P.2d 341, 346 (Colo.1987).

### III. *FINDINGS OF FACT*

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted Complaint.[1] Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on October 23, 1995. He is registered upon the official records, Attorney Registration No. 26267, and is therefore subject to the jurisdiction of the Court.

### *The Lewis Matter*

John and Natalie Lewis were in a car accident on May 3, 2004. Mr. and Mrs. Lewis retained Respondent in the spring of 2006 to represent them on a contingency basis in a personal injury lawsuit against Liberty Mutual Insurance ("Liberty"). Respondent had performed legal work for Mr. Lewis' company prior to the spring of 2006 and was a family friend of Mr. and Mrs. Lewis. Thus, although the parties never executed a formal fee agreement, they nevertheless formed an attorney-client relationship.

In May 2006, Respondent told Mr. Lewis that he was submitting their claim to Liberty. In the fall and winter of 2006, Respondent repeatedly called Mr. and Mrs. Lewis and advised them that he was in settlement mediation discussions with the "legal team" for Liberty. Respondent then told Mr. and Mrs. Lewis that he had settled their case for $30,000.00 plus outstanding medical bills.

On June 27, 2007, after purporting to send a demand for payment and supporting affidavits to Liberty to pay the settlement, Respondent presented a settlement agreement

---

1. *See* the People's Complaint in 08PDJ028.

to Mr. and Mrs. Lewis and told them that they would receive a check in fifteen days. Following numerous attempts to obtain their check from Respondent, Mrs. Lewis spoke with a representative from Liberty. The Liberty representative informed Mrs. Lewis that the alleged settlement papers she had signed were totally fraudulent, that Liberty had never heard of Respondent, and that they had not provided Respondent with any settlement agreement. The Liberty representative also told Mrs. Lewis that the statute of limitations had expired on their claim.

Upset by this news, Mr. Lewis demanded that Respondent immediately deliver their check. Respondent brought a dirty and ripped check to Mr. Lewis' office that he said had been issued by Liberty. However, Respondent would not allow the Lewis' to closely examine the check. Respondent then purportedly called Liberty in the presence of Mr. and Mrs. Lewis and asked Liberty to reissue the check. Respondent then promised to deliver the re-issued check to Mr. and Mrs. Lewis later that afternoon. The same evening, Respondent left a personal check in the amount of $34,145.00 on their front porch, but failed to sign the check.

Suspicious that Respondent had written his own check to cover the settlement, Mrs. Lewis contacted Respondent's bank. Respondent's bank advised Mrs. Lewis that the account contained insufficient funds to cash the check. Both Mr. and Mrs. Lewis' calls to Respondent from that day forward were "disconnected." Subsequent counsel has advised the Lewis' that the statute of limitations has passed on their claim and that they are foreclosed from filing a personal injury lawsuit against Liberty.

The admitted Complaint in this case presented clear and convincing evidence that Respondent knowingly failed to provide the Lewis' with competent legal representation, knowingly failed to act with reasonable diligence and promptness in representing them, knowingly failed to communicate with them, and knowingly engaged in dishonest conduct. The Court therefore concluded that Respondent violated Colo. RPC 1.1 (competence), Colo. RPC 1.3 (diligence), Colo. RPC 1.4 (adequate communication), and Colo. RPC 8.4(c) (dishonesty).

### The Larson Matter

Robert and Jeri Larson, an elderly couple, purchased a townhouse in 2004 and the following summer discovered water leaking into their crawlspace. They later discovered that the water came from their neighbor's flowerbed planted outside the wet wall.

The Larsons told Respondent about the problem and he offered to represent them on a contingency basis in an action against their neighbor. The Larsons were former clients and long-time friends of Respondent. Thus, although the parties never executed a formal fee agreement, they nevertheless formed an attorney-client relationship.

Respondent thereafter copied the Larsons on several demand letters addressed to their neighbor. He later told the Larsons that he had filed a lawsuit on their behalf against the neighbor. Respondent stated that the lawsuit had been filed in Golden, Colorado.

In October 2006, Respondent told the Larsons that they had finally won their lawsuit and that as a result they would receive $165,000.00. The Larsons were pleased, and they began shopping for a new home. Based on Respondent's promise that they would receive the check shortly, they purchased a new home.

Between October 2006 and July 2007, Respondent continued to promise the Larsons that their check was on its way. He left a number of voicemail messages telling the Larsons that he had the check, but then explaining that he could not drop it off for a variety of reasons.

Despite Respondent's representations to the Larsons, there is no record of any lawsuit filed anywhere on their behalf and no record of any judgment. Respondent has failed to return any of the Larsons' calls after they confronted him regarding his deceit.

The admitted Complaint in this case presented clear and convincing evidence that Respondent knowingly failed to provide the Larsons with competent legal representation, knowingly failed to act with reasonable diligence and promptness in representing them,

knowingly failed to communicate with them, and knowingly engaged in dishonest conduct. The Court therefore concluded that Respondent violated Colo. RPC 1.1 (competence), Colo. RPC 1.3 (diligence), Colo. RPC 1.4 (adequate communication), and Colo. RPC 8.4(c) (dishonesty).

### The People's Matter

Respondent failed to respond to the People concerning requests for investigation pursuant to C.R.C.P. 251.10. Mrs. Lewis filed her written complaint with the People on September 13, 2007. Mr. Larson filed his written complaint with the People on September 12, 2007.

Following extensive efforts by the People to contact Respondent, they petitioned the Colorado Supreme Court to immediately suspend him pursuant to C.R.C.P. 251.8.6. The Colorado Supreme Court immediately suspended Respondent from the practice of law on January 29, 2008.

The admitted Complaint in this case presented clear and convincing evidence that Respondent knowingly failed to respond to repeated requests for information from the People. The Court therefore concluded that Respondent knowingly violated Colo. RPC 3.4(c) (disobeying an obligation under the rules of a tribunal) and Colo. RPC 8.1(b) (failure to respond reasonably to a lawful demand for information from a disciplinary authority).

### IV. SANCTIONS

■ The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. *In re Roose*, 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

■ Respondent's failure to participate in these proceedings leaves the Court with no alternative but to consider only the established facts and rule violations set forth in the admitted Complaint in evaluating the first three factors listed above. The Court finds that Respondent violated duties owed to his clients, the public, and the legal system. Respondent specifically violated his duties to act with reasonable diligence, maintain his personal integrity, and obey his obligations under the rules of a tribunal. The entry of default established that Respondent *knowingly* engaged in this conduct and caused actual and potential financial and emotional injury to his clients.

■ The Court finds aggravating factors exist in this case including a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings, refusal to acknowledge the wrongful nature of his conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. *See* ABA *Standards* 9.22(b), (c), (d), (e), (g), (h), (i) and (j). Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor. Respondent failed to participate in these proceedings and therefore presented no evidence in mitigation. However, the People acknowledged that Respondent has no prior disciplinary record. *See* ABA *Standard* 9.32(a).

■ The People suggest that the presumptive sanction for the misconduct evidenced by the admitted facts and rule violations is disbarment. They cite ABA *Standards* 4.41(a-c) and 5.11(b) as well as Colorado Supreme Court case law in support of this proposition. However, the Court notes that ABA *Standards* 4.41(a-c) each contemplate *serious or potentially serious injury* to a client and ABA *Standard* 5.11(b) contemplates intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that *seriously adversely* reflects on the lawyer's fitness to practice. Although the People offered conclusory allegations in their admitted Complaint that Respondent caused serious or potentially serious injury to his clients, the Court finds

that the admitted facts instead support a conclusion that Respondent caused *injury and potential injury* to his clients. The Court also finds that the admitted facts support a finding that Respondent's dishonesty and/or deceit *adversely* reflected on his fitness to practice.

The Court therefore concludes that the presumptive sanction for the misconduct in this case is suspension. ABA *Standards* 4.42(a-b) provide that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client or engages in a pattern of neglect and causes *injury or potential injury* to a client. In addition, ABA *Standard* 6.22 provides that suspension is appropriate when a lawyer *knowingly* violates a court order or rule, and there is *injury or potential injury* to a client or a party, or *interference or potential interference* with a legal proceeding. Finally, ABA *Standard* 5.13 provides that reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that *adversely* reflects on the lawyer's fitness to practice law.

Colorado Supreme Court cases also support a period of suspension for neglect of multiple client matters plus other misconduct. *See People v. Regan*, 831 P.2d 893 (Colo.1992) (attorney suspended for one year and one day for neglecting four client matters, making misrepresentations to one client, being held in contempt in bankruptcy court, and failing to refund client funds). *See also People v. Eaton*, 828 P.2d 246 (Colo. 1992) (attorney suspended for one year and one day for neglecting client matters and misrepresenting status of matters to clients); and *People v. C de Baca*, 948 P.2d 1 (Colo. 1997) (two-year suspension, rather than disbarment, appropriate for attorney who neglected two client matters and engaged in dishonest conduct). Respondent's failure to participate in these proceedings or present significant factors in mitigation precludes any deviation from the presumptive sanction supported by the ABA *Standards* and Colorado Supreme Court case law.

The Court considered statements from each of the complaining witnesses during the Sanctions Hearing. Robert and Jeri Larson expressed their emotional exacerbation resulting from Respondent's conduct and their extreme disappointment in him because of how they had trusted him like family. John and Natalie Lewis expressed their disappointment and anger towards Respondent as well as their concerns for their personal safety following Respondent's uninvited appearance in their gated community. Both couples believe Respondent should not be allowed to practice law and neither want Respondent to cause additional harm to others.

## V. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the admitted Complaint, without explanation or significant mitigation, reveal the danger Respondent poses to the public. This misconduct adversely reflects on his fitness to practice law. Absent extraordinary factors in mitigation not presented here, the ABA *Standards* and Colorado Supreme Court case law applying the ABA *Standards* both support a lengthy suspension. Upon consideration of the nature of Respondent's misconduct, his mental state, the actual and potential injury caused to his former clients, the aggravating factors, and the absence of significant mitigating factors, the Court concludes that a two-year suspension from the practice of law is appropriate.

## VI. ORDER

The Court therefore **ORDERS**:

1. RYAN M. STERN, Attorney Registration No. 26267, is hereby **SUSPENDED** from the practice of law for a period of **TWO (2) YEARS,** effective thirty-one (31) days from the date of this order.

2. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.