The PEOPLE of the State of Colorado, Complainant,

v.

Judith Anne EATON, Attorney–Respondent.

No. 92SA55.

Supreme Court of Colorado, En Banc.

April 13, 1992.

---

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Larry S. Pozner, Denver, for attorney-respondent.

PER CURIAM.

■ An inquiry panel of the Supreme Court Grievance Committee approved a stipulation, agreement, and conditional admission of misconduct entered into between the respondent and the assistant disciplinary counsel. The panel recommended that the respondent be suspended from the practice of law for one year and one day and be assessed the costs of the proceeding. We accept the stipulation and the recommendation of the inquiry panel.

I

The respondent was admitted to the bar of this court on July 17, 1985, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). The stipulation admitted the following instances of professional misconduct.

A. On May 26, 1987, Mr. and Mrs. Velasquez retained the respondent to represent them in matters arising out of an automobile accident in which Mr. Velasquez was involved. After rejecting the other driver's insurance company's offer of settlement for $1,500, the Velasquezes asked the respondent to file an action against the other driver. ·On or about August 27, 1987, Mr. Velasquez reviewed and signed a complaint against the other driver and the other driver's employer that had been prepared by the respondent. The respondent, however, never filed a complaint on behalf of the Velasquezes.

After several unsuccessful attempts to contact the respondent, Mrs. Velasquez finally located the respondent in September 1988. The respondent misrepresented to Mrs. Velasquez that a court date on their case was scheduled for July 1989. The respondent has now paid the Velasquezes $925 of the $2,000 they claim to have been damaged by the respondent's misconduct.

The respondent admitted, and we agree, that her conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer), DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means), and DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client).

B. Uto Essien hired the respondent in February 1988 to defend him in a civil action. Essien paid the respondent a $620 fee as agreed, but because the respondent failed to file an answer or other response to the complaint, the plaintiff obtained a default judgment for $1,749.39 against Essien on February 22, 1988. The respondent did not inform Essien that a judgment had been entered against him. Instead, she falsely told her client that a pretrial conference was set and a trial was scheduled in October 1988. She later misrepresented to

Essien that the complaint had been dismissed.

When opposing counsel would not agree to vacate the default judgment, the respondent, without Essien's knowledge or consent, made payments toward the judgment in the amounts of $60 and $120. On April 21, 1989, the plaintiff garnished Essien's wages. Following arbitration, the respondent's employer paid Essien $1,673.84 in satisfaction of the malpractice claim that Essien had brought against the respondent and her employer.

The respondent's conduct violated DR 1-102(A)(4), DR 6-101(A)(3), DR 7-101(A)(1), DR 7-101(A)(2), and DR 7-101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship).

C. In January 1988, the respondent was retained to represent Lyn Gleason in a criminal case. Gleason was charged with three counts of sexual assault on a child. At trial, Gleason was convicted on two counts, and acquitted of one count of sexual assault. The respondent misrepresented to Gleason that she had filed a motion for new trial. She also falsely told Gleason that a transcript of the trial was being prepared, that she was filing an appeal on his behalf, and that the court had authorized her to hire a private investigator to assist in locating a witness. The respondent in fact took no steps to obtain a new trial and she allowed the time for taking a direct appeal to expire. A Crim.P. 35(b) motion for reconsideration filed by a deputy public defender was denied. Prior to entering into the stipulation with the respondent, the assistant disciplinary prosecutor received two separate legal opinions that the respondent's trial conduct was not ineffective, and that there were no "plain error" issues sufficient to support a motion for new trial.

As the respondent has stipulated, her conduct violated DR 1-102(A)(4), DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), DR 6-101(A)(3), DR 7-101(A)(1), DR 7-101(A)(2), and DR 7-101(A)(3).

II

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), indicate that either suspension or disbarment would be appropriate in this case. *ABA Standards* 4.62 states that, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." On the other hand, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." *Id.* at 4.61.

Similarly, *ABA Standards* 4.42 states that suspension is warranted when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." When the injury or potential injury is serious, disbarment may be appropriate. *Id.* at 4.41.

The presence of substantial factors in mitigation, however, persuades us that disbarment would be an unnecessarily harsh sanction. First, the respondent has no prior history of discipline. *ABA Standards* 9.32(a). Second, the record reflects that at the time of the her misconduct, the respondent was suffering from a significant mental disability or impairment. *Id.* at 9.32(h). The respondent was transferred to disability inactive status on May 24, 1990.

Moreover, the respondent is attempting to make full restitution to the Velasquezes, *id.* at 9.32(d), and has made efforts toward interim rehabilitation, *id.* at 9.32(j). We conclude that suspension for one year and one day, in conjunction with certain conditions for reinstatement, is a suitable disciplinary sanction. Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct, and we approve the recommendation of the inquiry panel.

### III

It is ordered that Judith Anne Eaton be suspended from the practice of law for one year and one day, effective immediately upon the issuance of this opinion. C.R.C.P. 241.21(a). Eaton shall not be reinstated until after she has complied with C.R.C.P. 241.22(b)-(d). It is further ordered that, prior to seeking reinstatement, Eaton pay restitution in full plus statutory interest from October 1, 1988, to the Velasquezes. It is further ordered, as a condition of reinstatement, that the respondent continue ongoing psychotherapy treatment as described in the stipulation during the period of suspension. It is further ordered, as an additional condition of reinstatement, that the respondent demonstrate, by an independent psychiatric evaluation, that she is emotionally and psychologically able to practice law. Finally, it is ordered that Eaton pay the costs of this proceeding in the amount of $51.96 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.