The PEOPLE of the State of
Colorado, Complainant.

v.

Peter B. ALBANI, Respondent.

No. 10PDJ095.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

June 7, 2011.

On April 5 and 6, 2011, a Hearing Board composed of DAVID M. HERRERA and ROBERT A. MILLMAN, members of the bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("the PDJ"), held a two-day hearing pursuant to C.R.C.P. 251.18. Elizabeth Espinosa Krupa and Adam J. Espinosa appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and Peter B. Albani ("Respondent") was represented by Leonard Berenato and David Worstell. The Hearing Board now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

### I. *SUMMARY*

Respondent and his co-counsel represented a client charged with multiple felonies for allegedly stealing $1,200,000.00 from her employer. During two in camera conferences, held without their client present, Respondent and his co-counsel made statements to the prosecutors and the judge expressing their disagreement with their client's decision to reject plea offers in order to combat any future ineffective assistance of counsel claim his client might bring and to disclose to the court a developing conflict in the attorney-client relationship. By doing so, Respondent failed to maintain the confidences of his client in violation of Colo. RPC 1.4(a), 1.6(a), 1.7(b), and 1.8(b). In concealing these two in camera proceedings from his client, Respondent violated Colo. RPC 8.4(c) and 8.4(d).

Even though Respondent attempted to preserve his own interests by divulging client confidences without his client's consent, the Hearing Board cannot find, under the facts here, that Respondent violated Colo. RPC 1.2(a). Nor does the Hearing Board find that Respondent's statements to the tribunal violated Colo. RPC 3.3(a)(1) or 8.4(c).

In light of Respondent's significant experience in the practice of law, but also taking into account several mitigating factors, the Hearing Board determines that a suspension for one year and one day, all stayed upon the successful completion of a two-year period of probation with conditions, is warranted.

### II. *PROCEDURAL HISTORY*

On September 15, 2010, the People filed a complaint alleging that Respondent violated Colo. RPC 1.2(a), 1.4(a), 1.6(a), 1.7(b), 1.8(b), 3.3(a)(1), 8.4(c), and 8.4(d) with respect to his conduct in two in camera conferences held without his client present. Respondent filed

an answer on November 1, 2010. The parties filed "Stipulated Facts and Law" on March 25, 2011. During the hearing on April 5 and 6, 2011, the Hearing Board heard testimony and considered the stipulated facts and law, the People's stipulated exhibits 1–9, and Respondent's exhibit A.

## III. FINDINGS OF FACT AND RULE VIOLATIONS

The Hearing Board finds the following facts and rule violations have been established by clear and convincing evidence. Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 30, 1984. He is registered upon the official records, attorney registration number 13982, and is thus subject to the jurisdiction of the Hearing Board in these disciplinary proceedings.[1]

### Representation of Patricia Ragusa

■ In 2004, Patricia Ragusa ("Ragusa") hired Respondent and his law partner, Robert Grossman ("Grossman"), to defend her against fifty-one counts of theft and attempted theft and fifty-one counts of computer crime and attempted computer crime filed by the Jefferson County District Attorney's Office. The prosecution alleged that she stole $1,200,000.00 from her employer by wire transfers made from her computer.[2] Ragusa paid Respondent and Grossman $110,000.00 for their representation. Following a trial in which she was convicted on all counts, Ragusa terminated Grossman and Respondent's services in December 2005.

### The First In Camera Proceeding

Ragusa's case was tried before a jury from November 7 to 16, 2005, with Judge Tamara Russell presiding. On November 7, 2005, before the jury was selected, the court held an in camera proceeding with only Respondent, Grossman, and the prosecution present. Respondent initiated this proceeding, and at Respondent's behest, his client was not privy to the discussions that followed.

During this in camera proceeding, Respondent disclosed to the court the district attorneys' plea offers and his discussions with Ragusa concerning those offers. Respondent began by informing the court that he believed it was "appropriate to make a brief *Schultheis* record."[3] Respondent revealed "that the district attorney's office ... [has] made us a number of plea bargain offers that we have advised our client to take unconditionally."[4] Respondent further explained that he and Grossman had "met with [Ragusa] repeatedly and were very adamant that [they] felt she should take that deal,"[5] and that "[Ragusa] led us to believe that she was going to take the deal" and they believed it was "folly for her not to have taken the deal, the final deal that was offered by the People."[6]

Respondent offered the following additional statements: (1) "We do not believe that [Ragusa is] incompetent";[7] (2) "[W]e do not

---

1. *See* C.R.C.P. 251.1(b).

2. The case was captioned *State of Colorado v. Patricia Ragusa*, case number 04CR3101, Jefferson County District Court.

3. Ex. 1 at 26:1–3. The *Schultheis* case discusses an attorney's obligation to request to withdraw from a case when the attorney is unable to dissuade his client from presenting fabricated or perjured testimony. *People v. Schultheis*, 638 P.2d 8, 13 (Colo.1981). Only when the motion to withdraw is denied by the court should counsel proceed with a request for a record outside the presence of the judge and prosecutor. *Id.* at 14. The record should be made in a manner that protects the confidentiality of the attorney-client relationship. *Id.* Judge Russell testified that in Jefferson County a *Schultheis* record may also reference a situation where there is a breakdown in the attorney-client relationship and the attorney can no longer represent his or her client.

Here, according to Judge Russell, an attorney would request to make a record outside the presence of the trial judge and prosecutors. Jefferson County has a procedure that includes a hearing in the presence of a second judge and court reporter wherein breakdowns in the attorney-client relationships are addressed on the record without the trial judge's participation. The record is then sealed and opened only for appellate purposes.

4. Ex. 1 at 26:4–7.

5. *Id.* at 26:12–13.

6. *Id.* at 26:17–20.

7. *Id.* at 27:11. Respondent testified that he commented on Ragusa's competence only because Judge Russell asked him about it.

believe she is insane"; [8] (3) "[W]e believe that her decision is flat out wrong"; [9] (4) "[W]e believe that her choice is just a very, very poor one"; [10] and (5) "[W]e have advised [Ragusa] that Mr. Grossman and I have and will carry on with dignity. We will not act like we hate [the prosecutors] and that we do not enjoy this line of work." [11] The court noted that Ragusa had "been advised on more than one occasion about [her potential sentence] by a couple of different judges" and decided to go forward with the trial.[12]

At the conclusion of the in camera proceeding, Respondent told the court that he would "not advise [Ragusa] of this [proceeding] should she ask [him and Grossman] what this was about. We don't think it was appropriate. It would only throw a monkey wrench thinking that we're against her." [13]

Ragusa testified that she did not give Respondent consent to speak to Judge Russell or the district attorneys about communications she had with her attorneys outside her presence. Respondent admits that the intent of this in camera proceeding was, in part, to make a record to protect himself in the event Ragusa brought an ineffective assistance of counsel claim against him in the future and that he did not consider how his conduct impacted his duties to Ragusa.[14] Respondent also felt that he had a duty to the tribunal to disclose the fact that Respondent did not accept the plea and he wanted to give the judge insight into an appropriate sentencing range. Respondent also testified that he did not intend to make a *Schultheis* record or to deceive the court, as at the time he understood that a *Schultheis* hearing concerned a client who intended to offer perjured testimony; however, this was not Respondent's concern.

### The Second In Camera Proceeding

On November 9, 2005, following a recess during the prosecution's casein-chief, the court held another in camera proceeding, again without Ragusa. It is unclear from the record who requested this hearing. Respondent began the proceeding by stating that "a most fortuitous situation happened that under the guise of calling back to talk to us about a question, a sequestration potential violation, that gave us an opportunity to come into chambers...." [15]

Respondent also revealed that during the recess he and Grossman were subjected to "perhaps the most vicious attack I've ever had to get from a client saying that I'm not fighting for her. And that I don't—if I can, not to be rude, but to quote her, don't give a sh[* *], don't give a f[* * *] and putting on a patsy defense." [16] Respondent wanted to

8. *Id.* at 27:20.

9. *Id.* at 27:19.

10. *Id.* at 27:23–24.

11. *Id.* at 29:3–6.

12. *Id.* at 27:25–28:4. Judge Russell testified when she realized that Respondent was not requesting either type of *Schultheis* hearing, she allowed defense counsel to make their record, was satisfied that the client was competent, and continued with the trial. She recognized there was a potential conflict between Ragusa and her attorneys but did not feel that it called for action other than to continue with the trial. Tom Jackson ("Jackson"), one of the prosecutors present, testified that he did not feel that Ragusa needed to be present, and that it did not register with him at the time that this hearing or the discussions therein might cause a reversal. Michelle Cantin–Weaver ("Cantin–Weaver"), the second prosecutor, also testified that she had no concerns that the hearing or discussions might cause a reversal.

13. *Id.* at 29:15–18.

14. Respondent testified that he believed someday Ragusa would claim he never discussed the various plea offers with her.

15. Ex. 2 at 208:10–13. Respondent testified that his use of the term "under the guise" was nothing more than poor word choice. The Hearing Board finds this testimony credible. Indeed, the evidence before the Hearing Board indicates that the initial purpose of the second in camera hearing was to address a sequestration issue.

16. *Id.* at 208:16–20. Respondent testified that a "massive blowup" occurred prior to the second in camera proceeding and that Ragusa was yelling, swearing, and making threats. He stated that this "was beyond anything [he] had ever experienced" and that it "shook him." Ragusa, by contrast, testified that she never yelled at Respondent.

make a "record, because, as [he] anticipated prior to this trial, [Ragusa] seems to be trying to make us a target...." [17] He further stated, "I just thought, wow, this [sequestration problem] is fantastic because now we can go back and just cool our jets and make a record of what we perceive to be going on." [18]

During the in camera proceeding, Grossman revealed that Ragusa was "expressing that she may not want us continuing to represent her." [19] The court asked the attorneys whether Ragusa wanted Respondent and Grossman to withdraw from representation and whether Ragusa wanted them to discontinue the defense now or in a future case.[20] Grossman responded that he believed "she was referring to this case." [21] Finally, Respondent stated that "Rob and I are certainly not going to quit. We're not going to let her fire us, if that ever were to come." [22] The court ended the hearing, instructed Respondent and Grossman to notify it if a *Schultheis* hearing needed to be conducted, and resumed the trial.[23]

Respondent admits that immediately prior to the second in camera proceeding he and Grossman had developed a conflict of interest with Ragusa and that he should have more clearly indicated to the judge the nature of that conflict. Respondent believes that had he done so, the judge could have made an appropriate ruling regarding the conflict. Respondent noted that, at the time, he felt that he had a duty of candor to the court to make a record regarding the breakdown in the attorney-client relationship. Respondent stated that in hindsight, he should have discussed the proceeding with Ragusa and it was error not to bring her back into chambers. He admitted that he revealed client confidences during these proceedings and that he realizes now he had a duty to Ragusa to have her present, to notify the court that there was a breakdown in the attorney-client relationship, and to discontinue the representation.

## Ragusa's Appeal and Remand

In April 2006, Ragusa was sentenced to fifteen years of incarceration, plus five years of mandatory parole and restitution. In June 2006, the Colorado State Public Defenders' Office filed an appeal on behalf of Ragusa, requesting reversal of Ragusa's conviction and arguing that her Sixth Amendment rights to have conflict-free counsel, to be present at trial, and to have the counsel of her choice were violated. Ragusa testified that she only became aware of the two in camera proceedings after her conviction, when she was able to review the record in connection with her appeal. Ragusa testified that she did not specifically recall her attorneys leaving the courtroom and going into chambers during the trial without her present. She did recall a series of bench conferences to which she was not privy. She remembers asking Respondent what he and Grossman had talked to the judge about during the bench conferences, and remembers Respondent stating that things were going well for them and not to worry; we are winning.

On September 3, 2009, the Colorado Court of Appeals reversed Ragusa's 2006 conviction and remanded the matter for a new trial.[24] This decision was premised on the two in camera proceedings at which Ragusa was not present. The court of appeals held that Ragusa was denied her rights to meaningfully exercise her choice of counsel, to be present at all critical stages of the proceedings, to make an intelligent and informed choice of whether to continue with counsel when a

17. *Id.* at 208:23–25.

18. *Id.* at 209:19–22.

19. *Id.* at 209:23–24.

20. *Id.* at 209:25–210:6.

21. *Id.* at 210:7–8.

22. *Id.* at 213:15–17. Respondent testified that he made this statement in the heat of the moment and that he regrets making it. He testified that he is aware of the fact that Ragusa could have discharged his services if she wanted to.

23. *Id.* at 213:23–25.

24. *Id.* at 2 ¶ 5; Ex. 5 (*People v. Ragusa*, 220 P.3d 1002 (Colo.App.2009)).

conflict appeared, and to receive zealous and loyal representation.[25]

The court of appeals also concluded that Respondent and Grossman "breached their duty to [Ragusa] by revealing [privileged] communications to the prosecution and to the court before and during the trial. This breach of duty is but one factor which evidences an actual conflict of interest between defendant and her counsel and the adverse effect the conflict had on their performance."[26]

In 2009, Respondent and Ragusa participated in legal fee arbitration. Respondent was ordered to, and did, reimburse Ragusa $1,500.00 of his total legal fees.[27]

On February 18, 2010, after the court of appeals' remand, Judge Russell held a hearing on a motion to disqualify her as the judge in Ragusa's second trial. At the hearing, Judge Russell stated, "I hope that people who read the case will note the fact that both times that counsel came back to see me, it was under pretext, they lied to me, then [sic] I would have never allowed them to come back had they told me the truth."[28] Judge Russell's testimony at the disciplinary hearing differed somewhat from her statements at the motions hearing on remand. At the disciplinary hearing, she testified that although she believed that counsel did ask for both in camera hearings under a pretext, her use of the term "lie" was too strong and she regretted using this term. After reviewing the transcripts of the in camera proceedings, she could not say that Respondent explicitly lied to her, but rather that he should have

been more forthcoming. She further testified that after a few moments she realized the in camera discussions were not a *Schultheis* hearing, even though Respondent used that term, and she allowed Respondent to make his record and then proceeded with trial.

Following the motions hearing on remand, Ragusa pled guilty in November 2010 to one count of theft, a class four felony. In December 2010, Ragusa was sentenced to seven years in the custody of the Department of Corrections plus the mandatory parole period.

## Colo. RPC 1.2(a)

■ Colo. RPC 1.2(a) requires lawyers to "abide by a client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive a jury trial, and whether the client will testify."[29] Pointing to Respondent's statements made in the first in camera hearing that he disagreed with Ragusa's decision to decline plea offers, the People contend that Respondent violated Colo. RPC 1.2(a).

The Hearing Board cannot find clear and convincing evidence that Respondent, by making such statements to the judge and prosecutors, failed to abide by Ragusa's decision to reject the district attorneys' plea offers and instead continue with trial. Although the Hearing Board views Respondent's comments as a breach of client confidences, the fact that trial proceeded demonstrates that Respondent abided by Ragusa's decision, albeit with the

25. Ex. 5 at 7–8.

26. Ex. 5 at 8–9. The court of appeals found that Respondent and Grossman shared privileged information with the prosecution and the trial court in the first in camera proceeding, when they discussed their advice to Ragusa about the plea offers and their assessment of her decision. As to the second in camera proceeding, the court of appeals determined that Respondent and Grossman again revealed client confidences by repeating statements Ragusa made to them about their defense and expressing their concerns that she was setting them up for future litigation. Ex. 5 at 9.

27. Ex. 8.

28. Ex. 4 at 14:11–19.

29. Colo. RPC 1.2(a) (2005). The Hearing Board notes that Respondent has asked it to apply the 2005 version of the Rules of Professional Conduct. The People appear to have a contrary opinion, citing only to the current rules with the exception of their Colo. RPC 1.7(b) claim, to which they cite the 2005 rule. However, the current rules became effective on January 1, 2008. Colo. RPC 9 (2010). Accordingly, the Hearing Board has determined that, because the events in question occurred during 2005, it will apply the 2005 rules. *See People v. Lopez*, 845 P.2d 1153, 1154 n. 1 (Colo.1993) (applying rules in effect at the time the conduct forming the basis for discipline occurred).

reservations he expressed outside his client's presence. For these reasons, we cannot find that Respondent violated Colo. RPC 1.2(a).

## Colo. RPC 1.4(a)

Respondent admits that he violated Colo. RPC 1.4(a),[30] which requires lawyers to, among other things, keep clients reasonably informed about the status of a matter, promptly comply with reasonable requests for information, and explain a matter to the extent reasonably necessary so that the client can make informed decisions about the representation.[31]

Respondent's admission is supported by the evidence showing that Respondent did not want Ragusa present during either in camera proceeding and that he did not have her consent to reveal their confidential communications. Ragusa testified that when she asked Respondent about certain communications he had had with the judge, Respondent just told her not to worry and that they were winning. Respondent never told Ragusa about the in camera hearings outside her presence and—as evidenced by the transcript—said he would refuse to disclose any information to Ragusa should she ask about them.[32] Respondent also admitted that his intent behind revealing these communications, in part, was to protect himself from allegations of ineffective assistance of counsel. Accordingly, we find that Respondent failed to comply with his duties of communication in violation of Colo. RPC 1.4(a).

## Colo. RPC 1.6(a)

The People contend that Respondent violated Colo. RPC 1.6(a), which provides in part that a lawyer "shall not reveal information relating to the representation of a client unless the client consents after consultation"

or the disclosure "is impliedly authorized in order to carry out the representation."[33]

It is axiomatic that in the attorney-client relationship, an attorney must maintain confidentiality of information and must not reveal information related to the representation in the absence of the client's consent.[34] This foundational duty encourages a client to trust the attorney completely and to communicate frankly with the attorney "even as to embarrassing or legally damaging subject matter."[35] The scope of information subject to the restrictions in Colo. RPC 1.6(a) is broad. The comment to Colo. RPC 1.6(a) provides: "The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."[36]

Respondent agrees, and the evidence demonstrates, that he violated Colo. RPC 1.6(a) when he revealed the following confidential client information without Ragusa's consent during the two in camera proceedings: (1) his disagreement with Ragusa's decision to reject the plea offer; (2) his strained relationship with Ragusa; (3) his advice to Ragusa during the representation and her responses and reactions; and (4) his belief that Ragusa was manipulating or would attempt to manipulate the judicial system and that she was setting him up for an ineffective assistance of counsel claim.

## Colo. RPC 1.7(b)

The People posit that Respondent's representation of Ragusa was materially limited when his self-interest drove him to reveal client confidences during the in camera proceedings in violation of Colo. RPC 1.7(b), which states that a lawyer shall not represent a client if the representation of that client may be materially limited by the law-

---

**30.** At the conclusion of the disciplinary hearing, Respondent confessed claims II (Colo. RPC 1.4(a)), III (Colo. RPC 1.6(a)), and IV (excluding paragraph 27 of the complaint) (Colo. RPC 1.7(b)). Respondent did not, however, admit that he was acting knowingly or with intent, only that he was negligent. *See also* Respondent's Memo. of Legal Authorities at 9.

**31.** Colo. RPC 1.4(a)-(b) (2005).

**32.** Ex. 1 at 29:15–18.

**33.** Colo. RPC 1.6(a) (2005).

**34.** Colo. RPC 1.6 cmt. (2005).

**35.** *Id.*

**36.** *Id.*

yer's own interests.[37] The 2005 comment to Colo. RPC 1.7(b) provides: "The lawyer's own interests should not be permitted to have an adverse effect on representation of a client."

Respondent has also admitted that his conduct violated Colo. RPC 1.7(b). Based on the evidence, the Hearing Board concludes that Respondent's conduct in revealing client confidences was motivated in part by a desire to reduce his exposure to a potential ineffective assistance claim. Respondent also stipulated that immediately prior to and during the second proceeding he was developing a conflict of interest with Ragusa and again wanted to make a record to protect himself. He admits that he did not consider how his behavior impacted Ragusa. The Hearing Board finds this conduct to be clear and convincing evidence that Respondent materially limited his representation of Ragusa by protecting his own interests in violation of Colo. RPC 1.7(b).

### Colo. RPC 1.8(b)

The People next assert that Respondent violated Colo. RPC 1.8(b), which provides that a "lawyer shall not use information relating to the representation of a client to the disadvantage of the client unless the client consents," [38] based on Respondent's efforts to protect his own self-interest and his revelation of client confidences without Ragusa's consent. The People argue Respondent was so concerned about an ineffective assistance of counsel claim that he placed in the record information that could be used in his favor and against Ragusa in a future proceeding regarding his representation. Respondent argues that Colo. RPC 1.8(b) applies only to prohibited business transactions, and therefore, he cannot be found in violation of this rule.[39]

With respect to Respondent's statements made during the first in camera proceeding

and his motivation to make them, Respondent's conduct clearly shows that he and Grossman were in conflict with Ragusa. The nature of this conflict is further demonstrated by the fact Respondent and Grossman made a record that could be used in their favor and against Ragusa in an unspecified future proceeding that they suspected might occur regarding their representation.

Additionally, Respondent acknowledged that he knew he was developing a conflict of interest immediately prior to and during the second in camera hearing and admitted that he should have more clearly indicated to Judge Russell the nature of that conflict in order for her to make an appropriate ruling. However, Respondent did not do so; rather, he revealed his strained relationship with Ragusa on the record outside of Ragusa's presence and without her consent in order to admittedly partially protect himself. Based on the evidence presented, the Hearing Board finds that at this point the conflict was apparent—enough so that Respondent felt compelled to exclude Ragusa while he made his record. Respondent had a duty to advise Ragusa about the nature of this conflict, yet he failed to do so. Respondent's conduct disadvantaged Ragusa in violation of Colo. RPC 1.8(b).

### Colo. RPC 3.3(a)(1)

■ Colo. RPC 3.3(a)(1) states that a lawyer "shall not knowingly make a false statement of material fact or law to a tribunal." [40] The People argue that Respondent knowingly made a false statement of material fact when he informed the court that he felt it appropriate to make a *Schultheis* record during the first in camera proceeding.

The People contend that the only reason Respondent made this statement was to exclude Ragusa from the proceeding, that he knew he did not want to make a bona fide *Schultheis* record, and that he made no at-

---

37. Colo. RPC 1.7(b) (2005).

38. Colo. RPC 1.8(b) (2005).

39. The Hearing Board, however, does not read Colo. RPC 1.8(b) as strictly limited to prohibited business transactions. This section of the rule is broader than Colo. RPC 1.8(a) (which specifically addresses prohibited business transactions), and by its plain language applies to all situations where an attorney uses information gained during the representation to his own benefit and to the disadvantage of the client.

40. Colo. RPC 3.3(a)(1) (2005).

tempt to correct this misstatement.[41] The People surmise that Respondent made these statements knowingly, with the intent to deceive the court as to the true purpose of the in camera proceeding. The People further contend that Respondent's false statement concerned a material fact because the court permitted the hearing without Ragusa based on Respondent's representations.

Respondent denies that he lied to the court, that he intended to mislead it, or that he wanted to make a *Schultheis* record. He asserts that at most he was negligent, as he does not remember using the term *Schultheis*, and if he did, he merely misspoke.

The record demonstrates that Respondent initiated the first in camera hearing by stating "[t]here is one more matter that we would like all four counsel to approach on." [42] Respondent did not lie or use a pretext to initiate this proceeding, as this statement was truthful—he had a matter to discuss. Only when he was in chambers did he mention *Schultheis*, not before. The Hearing Board finds Respondent's testimony credible that he misspoke in using the term *Schultheis*, as evidenced by his testimony that he believed a *Schultheis* record related only to a client's demand to present perjured testimony and by the record he ultimately made. Respondent did admit that his purpose was to make a record to the court and the prosecutors about his conflicts with Ragusa without her present, a fact supported by his own statements that, if asked, he would refuse to tell Ragusa what was said. However, we cannot say that Respondent's purpose behind this proceeding was misleading, as it was obvious to all those present at the hearing that Respondent was not trying to make a *Schultheis* record.[43]

The Hearing Board also finds Judge Russell's testimony credible. At the disciplinary hearing, Judge Russell testified that although she believed counsel did ask for both in camera hearings on a pretext, her use of the term "lie" was too strong, she regretted using this term, since Respondent did not outright lie to her, but she felt Respondent should have been more forthcoming. Additionally, Judge Russell was never deceived by Respondent's use of the term *Schultheis*, as she testified that she did not believe the in camera proceeding to be a *Schultheis* hearing and nevertheless allowed Respondent to proceed with his record absent Ragusa.

Further, we cannot say that Respondent's statement that he believed a *Schultheis* record appropriate relates to a material fact because no evidence was presented that the statement induced the court to assent to Respondent's request to conduct the hearing without Ragusa, thereby depriving her of the right to be present at all critical stages of the proceedings. As noted, Judge Russell knew this was not a *Schultheis* hearing but permitted Respondent to make his record anyway.

Consequently, the Hearing Board cannot find clear and convincing evidence that Respondent's use of the term *Schultheis* was a false statement knowingly made to the court in violation of Colo. RPC 3.3(a)(1).

### Colo. RPC 8.4(c)

The People's seventh claim for relief alleges Respondent violated Colo. RPC 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The People plead this claim based on the same operative facts pertinent to their Colo. RPC 3.3(a)(1) claim. The People contend that Respondent either knew his statement regarding a *Schultheis* record was false and failed to correct it, or was reckless in failing to determine whether his statement

---

**41.** We note that the People rely on Colo. RPC 3.3(a)(1) (2010) which provides that a lawyer shall not knowingly "fail to correct a false statement of material fact or law previously made to a tribunal by the lawyer." However, this language was not part of rule in effect at the time of Respondent's conduct. Thus, we do not consider whether Respondent failed to correct his statements in our analysis.

**42.** Ex. 1 at 25:19–20. Respondent does not remember using the term *Schultheis* and Judge Russell testified that she did not remember any discussion of *Schultheis* until the parties were in chambers—a fact supported by the record.

**43.** Judge Russell, Jackson, and Cantin–Weaver all testified that they did not believe the November 7, 2005, proceeding was a *Schultheis* hearing.

was true prior to making it. The People also argue that Respondent violated this rule by (1) intentionally, knowingly, or recklessly failing to tell Ragusa that he revealed client confidences to the court; and (2) by telling Ragusa that things were going well and they were winning when asked about the in camera hearings.

Respondent again denies making a misrepresentation to the court. He states that he misspoke when using the term *Schultheis* and made the statement during the heat of the moment. However, Respondent admitted that he never told Ragusa about the in camera proceedings and that he would have refused to tell Ragusa about the content of such proceedings should she have asked.

Based on the analysis set forth responding to the People's Colo. RPC 3.3(a)(1) claim, the Hearing Board concludes Respondent did not engage in conduct involving misrepresentation when he told the court that he believed it appropriate to make a brief *Schultheis* record. No evidence was presented demonstrating that Ragusa asked Respondent about what was said during the two in camera hearings. Ragusa testified that she was not aware of any in camera hearings during the trial and only remembered asking Respondent what was said at bench conferences. Thus, we cannot say that Respondent, by telling Ragusa that things were going well or that they were winning in response to her inquiry, violated Colo. RPC 8.4(c).[44]

However, it is uncontroverted that Respondent never told Ragusa about the in camera proceedings and that he would have refused to tell Ragusa about them should she have asked. A misrepresentation by omission is as egregious as an express or verbal misrepresentation.[45] Respondent had a duty to maintain client confidences.[46] And Ragusa as a criminal defendant had a right to be present at all critical stages of the trial.[47] By not disclosing to Ragusa that he had revealed client confidences during the in camera proceedings, Respondent violated his duty to her, denied her the right to make an informed choice about whether she wanted to reveal such confidences, and denied her the right to be present at the hearings. In concealing these proceedings and his statements therein from Ragusa, Respondent was deceitful and engaged in dishonest conduct in violation of Colo. RPC 8.4(c).[48]

### Colo. RPC 8.4(d)

Finally, the Hearing Board turns to the People's eighth claim for relief: that Respondent's use of false pretenses to persuade the court and the prosecutors to be present when he made harmful statements about Ragusa and disclosed her confidences in her absence prejudiced the administration of justice in violation of Colo. RPC 8.4(d). The People suggest that by engaging in this conduct, Respondent delayed and altered the course of the trial—as evidenced by the reversal of Ragusa's conviction on appeal due to Respondent's actions.

44. See *People v. Regan*, 831 P.2d 893, 895 (Colo. 1992) (finding attorney's misrepresentations regarding status of matter to one client violated precursor to Colo. RPC 8.4(c)); *see also People v. Eaton*, 828 P.2d 246, 247 (Colo.1992) (finding attorney's misrepresentations of status of matters to multiple clients violated same rule).

45. See CJI–Civ 19:2 (4th ed.) (2011), Nondisclosure or Concealment—Elements of Liability; *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.* 965 P.2d 105, 111 (Colo.1998) ("To succeed on a claim for fraudulent concealment or non-disclosure, a plaintiff must show that the defendant had a duty to disclose material information. A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that 'in equity or good conscience' should be disclosed.") (internal citations omitted).

46. ABA *Standards* § II; Colo. RPC 1.6.

47. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."); Colo. Const. art. II, § 16 (guaranteeing criminal defendants "the right to appear and defend in person").

48. See *People v. Regan*, 831 P.2d 893, 895 (Colo. 1992) (finding attorney's misrepresentations regarding status of matter to one client violates precursor to Colo. RPC 8.4(c)); *see also People v. Eaton*, 828 P.2d 246, 247 (Colo.1992) (finding attorney's misrepresentations of status of matters to multiple clients violates same rule).

The Hearing Board finds that Respondent's deliberate disclosure of client confidences and concealment of the disclosures from Ragusa was clearly prejudicial to the administration of justice, as contemplated by Colo. RPC 8.4(d).[49] He further caused injury to the judicial system by interfering with and causing delays to Ragusa's trial, which resulted in the expenditure of additional and unnecessary judicial resources.[50]

## IV. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law govern the selection and imposition of sanctions for lawyer misconduct. ABA *Standard* 3.0 mandates that, in selecting the appropriate sanction, the Hearing Board consider the duty breached, the injury or potential injury caused, Respondent's mental state, and the aggravating and mitigating evidence.

### ABA *Standard* 3.0—Duty, Injury, and Mental State

■ *Duty:* Respondent's disclosure of client confidences to the judge and the prosecutors during two in camera proceedings and his concealment of the proceedings from his client in violation of Colo. RPC 1.4(a), 1.6(a), 1.7(b), 1.8(b), 8.4(c), and 8.4(d) constitutes a dereliction of his duties to Ragusa, his client, the general public, and to the legal system.

*Mental State:* The Hearing Board concludes that Respondent acted knowingly with respect to all of the People's claims (save Colo. RPC 1.2(a), 3.3(a)(1), and 8.4(c)) when he revealed client confidences during the two in camera proceedings, refused to tell Ragusa about the hearings, and asked the court to hold two in camera hearings without Ragusa present so that he could make a record to protect, in part, his own self-interest.

*Injury:* Through his misconduct, Respondent caused actual and potential injury to Ragusa, the general public, and the legal system. By revealing client confidences without consent and by refusing to properly advise Ragusa of the conflict that he knew had developed, Respondent caused actual injury to Ragusa by preventing her from knowingly and intelligently exercising her right to conflict-free and effective counsel during her trial.[51] Respondent's misconduct violated Ragusa's right to effective representation and to a fair trial.[52]

Ragusa testified that when she first was made aware of the in camera hearings, she was shocked that her own attorneys were "lying about her behind her back" and "purposefully making her look bad." Ragusa testified that she was very angry, hurt, and betrayed when she read the transcripts,

**49.** Hearing Board member Robert A. Millman believes that the facts demonstrate Respondent's willful concealment of the two in camera proceedings from Ragusa in violation of Colo. RPC 1.4(a), 8.4(c), and 8.4(d). However, Mr. Millman would not have found separate violations of all three of these Rules of Professional Conduct, as he believes the claims to be cumulative and nothing more than a "piling on" of multiple rule violations founded upon the same conduct.

**50.** *See In re Smith*, 989 P.2d 165, 170, 173 (Colo. 1999) (affirming finding of Colo. RPC 8.4(d) violation where the hearing board determined, *inter alia*, that two actions filed and prosecuted by attorney resulted in the unnecessary, excessive expenditure of judicial resources); *People v. Murray*, 887 P.2d 1016, 1020 (Colo.1994) (finding attorney's conduct to violate Colo. RPC 8.4(d) when he caused the court to delay resolution of matter).

**51.** The Colorado Court of Appeals found that Respondent's and Grossman's misconduct denied Ragusa the rights to meaningfully exercise her choice of counsel, be present at all critical stages of the proceedings, and make an intelligent and informed choice of whether to continue when a conflict appeared. Ex. 5 at 5–6. The Hearing Board notes that although it has considered the findings and conclusions of the court of appeals, it has made its own independent determination of the actual and potential injuries suffered by Ragusa. *See In re Egbune*, 971 P.2d 1065, 1067 (Colo.1999) (stating district court's ruling is not binding on a hearing board because the burden of proof in a civil action is generally by preponderance of the evidence while in a lawyer discipline proceeding proof is by clear and convincing evidence).

**52.** *People v. Harlan*, 54 P.3d 871, 879 (Colo.2002) ("The right to conflict-free counsel is encompassed within the right to effective assistance of counsel.... That counsel must be conflict-free ensures that a defendant will receive the zealous advocacy to which he is entitled.").

which "led [her] to believe that every lawyer was a con."

Respondent's conduct also inflicted harm upon the general public and the legal system, as his behavior adversely affected Ragusa's trial, which was reversed and remanded. Although Ragusa was able to enter into a plea bargain to her benefit, the reversal caused substantial delays in the judicial process and the expenditure of additional and unnecessary judicial resources.

Finally, Respondent's conduct and the confidences he revealed had the potential to affect Judge Russell's rulings in the case and to affect the conduct of the prosecution.[53]

### ABA *Standard* 3.0—Aggravating Factors

█ Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. The Hearing Board considers evidence of the following aggravating circumstances in deciding the appropriate sanction.

*Dishonest or Selfish Motive—9.22(b):* Respondent acted with a dishonest and selfish motive when he asked the court to make a record revealing client confidences in both in camera hearings to protect himself should Ragusa bring a claim against him for ineffective assistance of counsel. However, we cannot find, based on the evidence, that Respondent's sole motivation was dishonest and selfish, as he also was motivated by his duty of candor to the tribunal. Thus, we will not weigh this factor heavily in aggravation.

*Vulnerability of the Victim—9.22(h):* Ragusa was a vulnerable client because she was charged with over one hundred felony criminal counts, was facing significant jail time, and was in custody at the time of trial. She therefore reasonably relied on Respondent to zealously defend her and protect her legal interests.

*Substantial Experience in the Practice of Law—9.22(i):* As Respondent has been a member of the Colorado bar since 1984, he has substantial experience in the practice of law.

### ABA *Standard* 3.0—Mitigating Factors

█ Mitigating factors are any considerations or factors that may justify a reduction in the degree of discipline imposed. The Hearing Board considers evidence of the following mitigating circumstances in deciding the appropriate sanction.

*Absence of a Prior Disciplinary Record—9.32(a):* Respondent has been practicing law for over twenty years and has no prior disciplinary history. The Hearing Board gives great weight to this factor.

*Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct—9.32(d):* Respondent has made a timely good faith effort to make restitution and rectify the consequences of his misconduct. He willingly participated in good faith in a legal fee arbitration proceeding, paid the $1,500.00 award, and apologized to Ragusa during those proceedings. Since participating in this disciplinary action, Respondent testified that he has voluntarily completed fourteen to fifteen hours of ethics CLEs in order to identify his mistakes and become a better attorney.

*Full and Free Disclosure to Disciplinary Board or Cooperative Attitude toward Proceedings—9.32(e):* The evidence indicates that Respondent has consistently cooperated with the People throughout this proceeding.

*Character or Reputation—9.32(g):* The Hearing Board heard testimony from multiple witnesses at trial as to Respondent's good reputation and character within the legal community. Specifically, Michael Kossen, a criminal defense attorney, met Respondent in 1989, has co-counseled over fifteen cases with Respondent, and has consulted with him in more than one hundred cases. He testified as to Respondent's reputation as an honest and hardworking attorney who puts forth

---

**53.** Judge Russell testified at the hearing that the confidences Respondent disclosed had no effect on her rulings during the trial. The only reason she recused herself on remand was that she did not want Ragusa to feel that she was not getting a fair trial. Jackson testified that the in camera hearings did not affect his behavior during trial, as the evidence against Ragusa was very strong, and his knowledge of what Respondent was thinking did not affect him or change his strategy.

an extraordinary effort on his cases. Colin Brese, a criminal defense attorney who has co-counseled cases with Respondent in over twenty trials, testified that Respondent is professional and honest and that his behavior in this matter was out of character and not typical. The Hearing Board finds the testimony of these two witnesses to be credible evidence of good character.[54]

*Delay in the Disciplinary Proceedings— 9.32(j):* The Ragusa case occurred in 2005— over five years ago. The delay was not caused by the People. The court of appeals' opinion was announced in 2009 and the People acted promptly by filing a complaint within a year of the opinion. Because of this delay in the disciplinary proceedings, however, it was difficult for all witnesses to precisely recall all of the underlying events and statements. However, because Respondent was unable to establish unfair prejudice as a result of the delay, this factor will not be weighed heavily.[55]

*Imposition of Other Penalties or Sanctions—9.32(k):* Respondent paid Ragusa the $1,500.00 arbitration award. Additionally, Respondent was severely chastised for his misconduct by the court of appeals in a published decision. This decision, as testified to by Respondent's colleagues, has caused some harm to Respondent's reputation.

*Remorse—9.32(l):* Respondent displayed great remorse for his behavior at the disciplinary hearing. He testified that he regrets his behavior during the in camera proceedings and that he realizes the statements he made had no place in front of the judge or the prosecutors. Respondent acknowledges that his statements did not assist Ragusa, that he should never have made them, and that he should have told her about the hearings. Respondent testified that he "cringes" when he reads the record and that he greatly regrets his behavior. The Hearing Board finds Respondent's testimony credible.

### Sanctions Analysis under ABA *Standards* and Case Law

ABA *Standard* 4.22 provides that suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client.[56] The Hearing Board finds that ABA *Standards* 4.22 provides an appropriate starting point in our analysis because Respondent did not act intentionally, but rather knowingly, when he revealed client confidences.

The Hearing Board cannot conclude, in light of sanctions levied in similar cases, that a lengthy suspension, as the People request, is appropriate in this instance. We also add that we cannot, in good conscience, conclude that public censure is the most suitable sanction for Respondent's conduct, as Respondent suggests. Respondent's conduct was not an isolated incidence of negligence, but rather involved knowing disclosures of client confidences made on more than one occasion. Moreover, Respondent's conduct caused actual injury to Ragusa and the legal system,

---

54. Although Judge Russell testified that she has known Respondent for over twenty years, that she considers him a fine attorney, that she has never questioned his honesty or any of his actions during trials, and that she felt his actions during this matter were an aberration and out of character, the Hearing Board recognizes that she was not specifically called as a character witness. *See People v. Morley,* 725 P.2d 510, 518 (Colo. 1986) (noting that it is generally improper for a judge to testify voluntarily as a character witness at an attorney disciplinary proceeding absent exceptional circumstances, and noting that it is within the discretion of the hearing board to consider whether a judge's testimony may unfairly inject the prestige of the judge' office into the proceedings in determining whether to permit the judge to testify as a character witness under these exceptional circumstances).

55. "Delay is a mitigating circumstance when the respondent attorney is able to establish that the proceeding's time span resulted in unfair prejudice to him or her, or is caused by unjustified prosecutorial delay." *In re Disciplinary Proceeding Against Preszler,* 169 Wash.2d 1, 232 P.3d 1118, 1133 (2010).

56. The People also request the Hearing Board apply ABA *Standards* 4.32 and 7.2. The Hearing Board finds that ABA *Standard* 4.32 is unnecessary to its analysis but notes that its sanctions determination would be the same under this standard. Likewise, the Hearing Board does not consider ABA *Standard* 7.2, as that standard does not change its analysis.

and as discussed above, his behavior flouted the attorney's core duties of loyalty and protection of client confidences.

The People cite *People v. Smith* for the proposition that a two-year period of suspension is appropriate here.[57] However, we consider this case factually distinguishable insofar as the attorney in *Smith*, who purchased cocaine from his client, intentionally aided law enforcement by surreptitiously recording conversations with that client in order to reduce his own exposure to prosecution.[58] The court found that the client's sale of cocaine was encouraged by the attorney, the attorney's misconduct contributed to the client's criminal activities, the attorney intentionally aided the police in prosecuting his client by obtaining information and evidence through unauthorized recordings of conversations, and the attorney was motivated to cooperate in order to minimize repercussions from his own use of cocaine.[59]

A more relevant case is the Colorado Supreme Court's decision in *People v. Lopez.*[60] In that matter, an attorney gave his client's handwritten document outlining his client's version of underlying events to the district attorney in connection with plea negotiations without his client's permission.[61] There, the attorney's misconduct warranted a public censure.[62] Respondent's misconduct is somewhere more serious than the lawyer's misconduct in *Lopez* because Respondent knowingly revealed multiple client confidences to the court and prosecutors on the record during two in camera hearings. However, Respondent's misdeeds were limited to disclosure of client confidences within one case, while in *Lopez* the attorney also made misrepresentations in his response to investigation in violation of Colo. RPC 8.4(c), which further supported a more severe sanction.[63] Even given these distinctions, we conclude that the *Lopez* case provides more relevant guidance than the *Smith* case where the conduct and underlying motivation was more egregious than here and is simply not analogous to the case at hand.[64]

In light of the mitigating factors established by the evidence, including: (1) Respondent has not been disciplined in over twenty years of practice; (2) Respondent has an otherwise good character; and (3) Respondent has expressed significant remorse for his misconduct, we find that a shorter period of suspension is the most appropriate sanction here. Accordingly, we impose upon Respondent a suspension of one year and one day, all stayed upon the successful completion of a two-year period of probation.

## V. CONCLUSION

The legal profession demands an elevated standard of conduct from its members, and the community expects lawyers to exhibit the highest standards of honesty and integrity. Respondent's misconduct was an affront to the fundamental professional duties of communication, loyalty, and honesty he owed to his client. His disclosure of client confidences and his failure to recognize and discuss a developing conflict with his client undermined his client's right to conflict-free counsel, to effective representation, and to a

57. 778 P.2d 685, 687–88 (Colo.1989).

58. *Id.* at 687.

59. *Id.* at 688.

60. 845 P.2d 1153 (Colo.1993).

61. *Id.* at 1154–55.

62. *Id.* at 1156.

63. *Id.* at 1155–56.

64. *See also In re Rosen*, 198 P.3d 116, 119–21 (Colo.2008) (suspending for six months, all stayed with probation where attorney knowingly made deceitful statements to an insurance company by referring to his deceased client in the present tense and misinforming the insurer of the timing of his client's death); *In re Gibson*, 991 P.2d 277, 278–79 (Colo.1999) (continually misrepresenting status of case to client for four years warranted thirty-day suspension based on mitigating factors); *Columbus Bar Ass'n v. Willette*, 117 Ohio St.3d 433, 884 N.E.2d 581, 588–89 (2008) (suspending attorney for one year, with six months stayed, for revealing client confidences, making misrepresentations to clients, falsely advertising his services, and soliciting business over the telephone). Although these cases imposed a more severe sanction than that imposed in this matter, they are distinguishable in that they involved multiple instances of deceitful statements and revelations of client confidences for an extended period of time.

fair trial. In light of the serious nature of Respondent's misconduct and the factors in mitigation, the Hearing Board concludes Respondent should be suspended for one year and one day, all stayed upon the successful completion of a two-year period of probation.

## VI. ORDER

The Hearing Board therefore **ORDERS:**

1. **PETER B. ALBANI,** attorney registration number 13982, is hereby **SUSPENDED FOR ONE YEAR AND ONE DAY, ALL STAYED UPON THE SUCCESSFUL COMPLETION OF A TWO-YEAR PERIOD OF PROBATION.** The suspension **SHALL** become public and effective thirty-one days from the date of this order upon the issuance of an "Order and Notice of Suspension" by the PDJ and in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the PDJ **on or before June 27, 2011.** No extensions of time will be granted.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.