**The PEOPLE of the State of
Colorado, Complainant,**

v.

**Larry Douglas SATHER, Attorney–
Respondent.**

**No. 97SA91.**

Supreme Court of Colorado,
En Banc.

April 21, 1997.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

George S. Meyer, Denver, for Attorney–Respondent.

PER CURIAM.

The assistant disciplinary counsel and the respondent entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. The conditional admission recommended discipline in the range of a public censure to a six-month suspension from the practice of law. An inquiry panel of the supreme court grievance committee approved the conditional admission with the recommendation that the respondent be publicly censured. We accept the conditional admission, but conclude that suspension for thirty days is warranted.

### I.

The respondent was admitted to practice law in Colorado in 1976. The conditional admission states that on October 27, 1993, Kim Eygnor and Amy Pelz were seriously injured in an automobile accident caused by the admitted negligence of another driver. Pelz was pregnant at the time of the accident. As a result of the accident, Pelz's baby was born prematurely and died two days later.

Eygnor and Pelz contacted Joseph Lazzara who had been admitted to the Colorado bar on October 21, 1993. Pelz's parents were acquainted with Lazzara, who was then working at the respondent's law office. Eygnor executed a contingent fee agreement with the respondent's firm in November 1993 to represent Eygnor regarding the accident. The next month, Pelz and her parents executed a contingent fee agreement with the respondent to also represent Pelz in matters related to the accident.

On December 23, 1993, Eygnor received payment on her insurance claim for property damage to her vehicle under PIP benefits. The respondent kept about $1,225 of the payment made to Eygnor, or one-third. In the conditional admission, the respondent admits that he should not have taken a one-third contingent fee for his services related to Eygnor's PIP benefits, but should have based his fee the PIP claim as determined by the number of hours customarily charged by lawyers for resolving PIP issues. The respondent therefore stipulated that by charg-

ing Eygnor the one-third contingent fee with respect to the PIP benefits, he violated R.P.C. 1.5(a) (charging an unreasonable fee). *Cf. People v. Calvert,* 915 P.2d 1310, 1311 (Colo.1996) (where contingent fee agreement did not cover the PIP claim and the lawyer did not adequately explain the basis for his fee to the client, the lawyer violated DR 2–106(A) (charging or collecting an excessive fee) by failing to explain the basis for his fee adequately). In November 1996, the respondent voluntarily refunded to Eygnor the amount he had retained plus interest.

The relationship between Lazzara and the respondent deteriorated to the point that Lazzara terminated his affiliation with the respondent on April 4, 1994. Their parting of the ways was abrupt and acrimonious and Lazzara filed an action against the respondent for amounts Lazzara claimed the respondent owed him.

Three days later, the respondent filed a complaint in district court on behalf of Eygnor, Pelz, and Pelz's deceased infant. While the question was raised whether the respondent had the authority to file the complaint, and his clients did not expect him to file the action when he did, the assistant disciplinary counsel contends that this issue is better treated as a failure of the respondent to properly communicate with his clients. The respondent admits that he did not adequately discuss the filing of the complaint with his clients, thereby violating R.P.C. 1.4(a) (failing to keep a client reasonably informed about the status of a matter), and R.P.C. 1.4(b) (failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation).

After terminating his employment with the respondent, Lazzara associated himself with another lawyer with the intention of handling the Eygnor and Pelz cases. The other lawyer sent a letter by facsimile transmission to the respondent on April 29, 1994, advising the respondent that Eygnor and Pelz had retained his law firm as co-counsel with Lazzara, and that Eygnor and Pelz had discharged the respondent. The lawyer requested immediate delivery of the files. On the same date, Pelz and her father faxed a letter to the respondent confirming the termination of the respondent's representation and asking for the return of the file; Eygnor did the same on May 3. The respondent made the files available to the other lawyer about two weeks later.

On May 16, 1994, the respondent filed two notices of claims for attorney's liens in the district court, one lien concerning Eygnor and one concerning Pelz. *See* § 12–5–119, 5A C.R.S. (1991). The total lien against Eygnor's recovery amounted to $7,331.65; that pertaining to Pelz was $10,498.77.

The respondent's lien statements included billings for work performed by the respondent and by Lazzara. The respondent charged $200 per hour for Lazzara's services. The respondent has stipulated that this rate was unreasonable and that a reasonable hourly fee for Lazzara, who had just been admitted to the bar, would have been $75 to $100. While this excessive hourly rate did not significantly affect Eygnor's charges, the fees attributable to Lazzara's time added $1,300 to Pelz's bill.

Moreover, the respondent admits that he changed ten entries of Lazzara's time from 0.25 to 0.30 hours, resulting in an additional $80 in charges to the clients. Further, he charged the clients $200 an hour for Lazzara to pick up a police report, and now agrees that it was unnecessary to have a $200 per hour lawyer do this. The respondent has stipulated that the foregoing charges contained in his claim for attorney's fees violated R.P.C. 1.5(a) (charging an unreasonable fee).

According to the conditional admission, the Eygnor and Pelz cases settled in 1995, and their lawyer testified that the respondent's activities did not impede or materially delay those settlement efforts. The respondent filed for a personal bankruptcy in October 1994. The bankruptcy trustee settled the respondent's claims for attorney fees in the Eygnor and Pelz matters.

The complainant indicates that beginning in October 1993, the respondent was undergoing significant personal problems involving the dissolution of his marriage. The respondent represents that he is no longer suffering from these personal problems that occurred

during the time of the misconduct in this case.

## II.

■ In approving the conditional admission, the inquiry panel recommended that the respondent be publicly censured. In his analysis of discipline, the assistant disciplinary counsel asserts that a ninety-day suspension is more appropriate. The respondent's analysis of discipline contends that a public censure is adequate under the circumstances, but that if a suspension is deemed warranted, a thirty-day suspension is sufficient.

■ Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & 1992 Supp.) (ABA *Standards* ), in the absence of aggravating or mitigating circumstances, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." ABA *Standards* 7.2. Charging a client an unreasonable or excessive fee is a violation of a duty owed as a professional. *See People v. Kardokus,* 881 P.2d 1202, 1204 (Colo.1994) (lawyer suspended for thirty days for charging a clearly excessive fee for a dissolution of marriage and neglecting to perform the necessary work); *see also* ABA *Standards* 7.2 commentary ("Suspension is appropriate, for example, when the lawyer does not mislead a client but engages in a pattern of charging excessive or improper fees."). Since the respondent's charging of the unreasonable fees was not merely negligent, ABA *Standards* 7.3, which recommends a public censure as a sanction, is not applicable.

■ The respondent has received two letters of admonition, one in 1983 and one in 1996. The 1983 admonition involved the respondent's failure to give an accounting of the time spent and the funds received in two cases, a practice the grievance committee found "deceitful." Prior discipline is an aggravating factor, ABA *Standards* 9.22(a), although the remoteness of the misconduct covered in the 1983 letter mitigates its significance, *id.* at 9.32(m). We consider the respondent's 1996 letter of admonition as evidence of a pattern of misconduct, *id.* at 9.22(c), since it concerns events apparently occurring during the same time period as in this case. A significant aggravating factor in this case is the respondent's substantial experience in the practice of law. *See id.* at 9.22(i).

■ The assistant disciplinary counsel stipulated to the following mitigating factors: the presence of personal or emotional problems, *id.* at 9.32(c); full and free disclosure during the disciplinary process, *id.* at 9.32(e); and the presence of remorse, *id.* at 9.32(l ). The fact that in November 1996 the respondent refunded the fees he took out of Eygnor's PIP recovery almost three years earlier is not a significant factor in mitigation for disciplinary purposes. *Compare id.* at 9.32(d) (*timely* good faith effort to make restitution is a mitigating factor) *with id.* at 9.4(a) (forced or compelled restitution is neither aggravating or mitigating).

Considering the nature of the misconduct together with the factors in mitigation, we have concluded that at least a short period of suspension is warranted. *See Kardokus,* 881 P.2d at 1204. Accordingly, we accept the conditional admission and order that the respondent be suspended for thirty days. Some members of the court, however, would have imposed a longer suspension.

## III.

It is hereby ordered that Larry Douglas Sather be suspended from the practice of law for thirty days, effective thirty days after this opinion is issued. The respondent is also ordered to pay the costs of this proceeding in the amount of $693.25 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202, within thirty days of the date on this decision.