**The PEOPLE of the State of Colorado, Complainant**

v.

**Martin R. STAAB, Respondent.**

**Nos. 12PDJ021, 12PDJ043.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 25, 2012.

Attorney Regulation. The Presiding Disciplinary Judge suspended Martin R. Staab (Attorney Registration Number 16218) for a year and a day, effective October 30, 2012. Staab failed to diligently represent the interests of two clients, and he neglected to communicate with them about the status of their matters. In one of those matters, he

made false statements to his client about the setting of a trial date. Staab did not cooperate with the disciplinary investigation, nor did he participate in the disciplinary proceeding. His misconduct constitutes grounds for the imposition of discipline pursuant to C.R.C.P. 251.5 and violated Colo. RPC 1.3, 1.4(a), 1.16(d), 3.2, 8.1(b), 8.4(c), and 8.4(d).

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

On August 28, 2012, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Kelly A. Murphy appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Martin R. Staab ("Respondent") did not appear, nor did counsel appear on his behalf. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### I. SUMMARY

Respondent failed to diligently represent the interests of two clients, and he neglected to communicate with them about the status of their matters. In one of those matters, he made false statements to his client about the setting of a trial date. Respondent did not cooperate with the disciplinary investigation, nor did he participate in the disciplinary proceeding. After considering the nature of Respondent's misconduct and its consequences, the aggravating factors, and the single mitigating factor, the Court finds the appropriate sanction is suspension for one year and one day.

### II. PROCEDURAL HISTORY

The People filed their complaint in case number 12PDJ021 on February 24, 2012.[1] Respondent failed to answer the complaint,

and the Court granted a motion for default on May 21, 2012. The People filed a complaint in case number 12PDJ043 on May 24, 2012, and filed an amended version of that complaint on July 12, 2012. On August 21, 2012, the Court granted the People's motion for default in case number 12PDJ043 and consolidated that case with case number 12PDJ021. Upon the entries of default, the Court deems all facts set forth in the complaints admitted and all rule violations established by clear and convincing evidence.[2] No evidence or testimony was presented at the sanctions hearing on August 28, 2012.

### III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaints.[3] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on November 14, 1986, under attorney registration number 16218.[4] He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[5]

#### Zissimos Matter

In the complaint filed under case number 12PDJ021, the People allege that Respondent violated several Rules of Professional Conduct in the course of representing Shelly Zissimos ("Zissimos"). Zissimos hired Respondent in 2006 to probate the estate of her grandmother, Velma C. Hanson ("Hanson"). Zissimos gave Respondent documents pertaining to the estate, including Hanson's will. In a letter dated April 7, 2006, Respondent informed Zissimos that he had prepared several documents relating to the estate but he still needed to prepare additional documents.

---

1. Two administrative suspension orders were issued to Respondent in May 2011 for failure to pay registration fees and failure to complete continuing legal education requirements. The Colorado Supreme Court attorney information website indicates that Respondent has not disclosed professional liability coverage in compliance with C.R.C.P. 227.

2. See People v. Richards, 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

3. See the People's complaints for further detailed findings of fact.

4. Respondent's registered business address is 813 Main St., P.O. Box 748, Louisville, Colorado 80027.

5. See C.R.C.P. 251.1(b).

The same day, he wrote to the four heirs of the estate, including Zissimos's mother, Patricia Hawkins ("Hawkins"), stating that his rate was $150.00 an hour and that he did not expect to spend more than ten hours on the matter. Respondent filed several estate-related documents with the probate court, and in June 2006 the court authorized Zissimos to act as the personal representative for Hanson's estate.

On June 22, 2006, Respondent wrote to Zissimos, outlining the work that remained to be done. Respondent did not bill for the work he had performed to this point. After June 2006, he stopped working on the matter. Hawkins called Respondent on September 25, 2008, and he admitted he had "dropped the ball" on the case. He pledged to recommence work on the case, but then failed to follow through.

In January 2009, Hawkins and her husband declared bankruptcy. Hawkins had received $15,000.00 from the Hanson estate by this time and she understood she would receive an additional $4,000.00—a fact that was relevant to her bankruptcy. On June 8, 2009, Hawkins faxed Respondent a request for information about her remaining interest in the estate. Although this fax was in the case file that Respondent subsequently provided to the People in their investigation, Respondent did not respond to Hawkins at the time of her request.

Hawkins again faxed Respondent on June 24, 2009, stating that the bankruptcy trustee needed information about the status of the final distribution. Although this fax likewise was in Respondent's case file, he did not respond to the fax at the time.

Zissimos visited Respondent's office on numerous occasions, but he was never there. On July 9, 2009, she finally saw him at his office. Respondent told her that the case kept getting pushed to the bottom of his pile of work, but he again promised to complete work on the case. He failed to honor his promise. Hawkins's bankruptcy trustee wrote to Respondent on July 13, 2009, requesting information about the estate, but Respondent did not reply.

In May 2011, Hawkins contacted the probate court and learned the matter had been closed in August 2009 due to Respondent's inaction. Also in May 2011, Zissimos visited Respondent's office. A receptionist told her Respondent no longer worked there but could be reached at his home phone number. Respondent did not return messages Zissimos left for him at his home number.

During the People's investigation of this matter and the disciplinary proceeding, Respondent failed to respond in writing to the request for investigation and failed to cooperate in setting his deposition.

■ In this matter, Respondent violated Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about a matter and promptly comply with reasonable requests for information); Colo. RPC 1.16(d) (upon termination, a lawyer shall take steps to protect a client's interest and surrender a client's file); Colo. RPC 8.1(b) (a lawyer shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority); and C.R.C.P. 251.5(d) (a lawyer shall respond to a request by regulation counsel for information).

### Reisig Matter

The People's complaint filed under case number 12PDJ043 concerns Respondent's representation of Larry Reisig ("Reisig"), a longtime client of Respondent and the president and sole shareholder of AABC Truck Sales, Inc. ("AABC"). In April 2010, Reisig hired Respondent to represent AABC in a lawsuit against a person for whom AABC had done work. Respondent filed a complaint in Arapahoe County District Court on April 16, 2010. On July 22, 2010, the court issued an order indicating that a trial had not been set, there had been no filings in more than ninety days, and the case would be dismissed in thirty days unless AABC took action. Respondent then filed two notices to set a trial date, but he failed to set a trial date.

Respondent told Reisig after filing the lawsuit that he expected a trial would be held in November or December 2010. He later told Reisig that the trial would take place in 2011, even though he had failed to set a date. On November 30, 2010, the court issued another order stating that because no trial had been set, the case would be dismissed in thirty days unless AABC took action. Respondent filed a status report on December 30, 2010, indicating that he was working on clearing trial dates. On January 5, 2011, the court ordered the case to remain docketed pending the setting of trial within thirty days. Respondent did not set the trial within that period.

On February 7, 2011, the court entered an order providing that the case would be dismissed if AABC did not take action within ten days. Respondent did not take the requisite action. Yet on February 8, 2011, Respondent told Reisig that the case was set for trial in May 2011, even though he knew that was not true. Respondent took no further action on the lawsuit.

After February 8, 2011, Respondent did not respond to Reisig's phone messages and emails. The court dismissed AABC's lawsuit without prejudice on February 22, 2011. Reisig only learned of the dismissal upon contacting the court in April 2011. Respondent also had failed to send Reisig copies of court orders and to inform Reisig of delays in the lawsuit.

In April 2011, Reisig hired new counsel. Reisig and his new counsel attempted without success to obtain the case file from Respondent. When Reisig visited Respondent's office in May or June 2011, someone at the office helped find the case file for Reisig.

Respondent did not respond in writing to the request for investigation in this matter, nor did he respond to the People's communications regarding setting his deposition.

■ In the Reisig matter, as in the Zissimos matter, Respondent violated Colo. RPC 1.3, 1.4(a), 1.16(d), and 8.1(b), as well as

C.R.C.P. 251.5(d). In addition, he violated Colo. RPC 3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); Colo. RPC 8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

## IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[6] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and any aggravating and mitigating evidence.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

■ *Duty:* Respondent violated a duty to his clients by not exercising reasonable diligence, providing inadequate communication, and making a false statement to Reisig.[7] Respondent also neglected his duties to the legal system in the Reisig matter when he ignored several court orders directing him to take action.[8] In addition, by failing to take appropriate measures upon termination of his representations, he violated his duties as a professional.[9]

■ *Mental State:* The complaints explicitly establish that Respondent knowingly failed to cooperate with the People's investigation. The complaints also strongly suggest that Respondent engaged in the other misconduct either knowingly or recklessly.

■ *Injury:* Respondent injured his clients by denying them a fair opportunity to participate in court proceedings and by delaying resolution of their cases.

6. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

7. *See* ABA *Standard* 4.0.

8. *See* ABA *Standard* 6.0.

9. *See* ABA *Standard* 7.0.

## ABA *Standards* 4.0–7.0—Presumptive Sanction

ABA *Standard* 4.42 calls for suspension when a lawyer causes injury or potential injury to a client by knowingly failing to perform services or engaging in a pattern of neglect. Suspension also is the presumptive sanction when a lawyer knowingly deceives a client, thereby causing injury or potential injury, pursuant to ABA *Standard* 4.62. Likewise, suspension often is the appropriate sanction for a lawyer's knowing violation of a court order, when that conduct actually or potentially injures a client or interferes with a legal proceeding.[10]

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[11] The Court considered evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction. Because Respondent did not participate in the disciplinary proceeding, the Court is aware of just one mitigating circumstance.

*Pattern of Misconduct—9.22(c):* Respondent engaged in the same misconduct in two client matters during the same general timeframe, demonstrating an incipient pattern of misconduct.[12]

*Multiple Offenses—9.22(d):* Respondent engaged in myriad types of misconduct, ranging from inadequate communication to lack of diligence to dishonesty.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to

the bar in 1986. The misconduct at issue here reflects particularly poorly on such a long-standing practitioner.

*Absence of Prior Disciplinary Record—9.32(a):* The Court considers Respondent's lack of prior discipline as a mitigating factor.

### Analysis Under ABA *Standards* and Colorado Case Law

The balance of aggravating and mitigating factors in this case—which tips in favor of aggravation—does not call for a deviation from the presumptive sanction of suspension. However, the aggravators do suggest that a relatively lengthy suspension is appropriate here. To determine the length of suspension that is warranted under these circumstances, the Court looks to case law for guidance.

In *People v. Rishel,* the Colorado Supreme Court suspended an attorney for a year and a day after he seriously neglected two client matters and defaulted in the disciplinary proceeding.[13] Here, unlike in *Rishel,* it does not appear that Respondent kept unearned client fees, yet the *Rishel* matter did not involve dishonesty toward a client.[14] As such, the Court determines that *Rishel,* on the whole, provides highly relevant guidance.

In *People v. Eaton,* the Colorado Supreme Court approved the suspension of an attorney's law license for a year and a day after she neglected three clients' cases—leading to entry of default judgment in one such case—and made multiple dishonest statements to those clients.[15] Although the misconduct in *Eaton* was somewhat more significant than that presented here, the misconduct was counterbalanced by "substantial" mitigation;

---

**10.** ABA *Standard* 6.22. *But see* ABA *Standard* 6.23 cmt. (stating that *"[m]ost* courts impose a reprimand upon lawyers who ... violate a court order or rule that causes injury or potential injury to a client ..., or who cause interference or potential interference with a legal proceeding") (emphasis added).

**11.** *See* ABA *Standards* 9.21 & 9.31.

**12.** *See People v. Sather,* 936 P.2d 576, 579 (Colo. 1997) (accepting a conditional admission of misconduct and stating that a letter of admonition issued the previous year was "evidence of a

pattern of misconduct" under ABA *Standard* 9.22(c) because it "concern[ed] events apparently occurring during the same time period as in this case"); *In re Reardon,* 759 A.2d 568, 577 (Del. 2000) ("A pattern may be discerned from two or more recognizably consistent acts that serve as a predictor of future misconduct.").

**13.** 956 P.2d 542, 544 (Colo.1998).

**14.** *Id.* at 542–44.

**15.** 828 P.2d 246, 247–49 (Colo.1992).

as such, the Court finds that *Eaton* presents a helpful basis for comparison.[16]

Finally, the Colorado Supreme Court imposed a suspension for a year and a day in *People v. Flores,* which involved an attorney's serious neglect of one client matter spanning a period of four years, and where several aggravating factors but no mitigating factors applied.[17]

In sum, the comparable decisions of the Colorado Supreme Court cited above and the ABA *Standards* support the People's recommendation that the Respondent serve a suspension for a year and a day.

## V. *CONCLUSION*

█ Respondent abandoned his fundamental duty to represent his clients with loyalty and candor. His misconduct, coupled with his violation of court orders and failure to cooperate with the People's investigation, merits the suspension of his law license for a year and a day.

## VI. *ORDER*

The Court therefore **ORDERS:**

1. **MARTIN R. STAAB,** attorney registration number 16218, is **SUSPEND-**ED **FOR ONE YEAR AND ONE DAY.** The **SUSPENSION SHALL** take effect only upon issuance of an "Order and Notice of Suspension." [18]

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before October 16, 2012.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within seven days, unless otherwise ordered by the Court.

3. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fourteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than fourteen days thereafter.

---

16. *Id.* at 248.

17. 804 P.2d 192, 194 (Colo.1991).

18. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.