The **PEOPLE** of the State of Colorado, Complainant

v.

Glenn L. **WEBB,** Respondent.

No. 13PDJ007.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 13, 2013.

---

106. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

On May 15, 2013, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Kim E. Ikeler appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and Glenn L. Webb ("Respondent") appeared pro se by telephone. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### I. *SUMMARY*

Respondent abandoned and failed to adequately communicate with three of his clients. While representing two of these clients, he accepted money to pay patent-related fees but never paid the fees, thereby engaging in conversion. Respondent also lied to two clients about the status of their patent applications. In the course of these representations, Respondent violated Colo. RPC 1.1, 1.3, 1.4(a)(3), 1.16(d), 8.1(b), and 8.4(c). His misconduct warrants disbarment.

### II. *PROCEDURAL HISTORY*

The People filed their complaint against Respondent on January 23, 2013. Respondent failed to answer the complaint, and the Court granted a motion for default on April 5, 2013. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1] At the sanctions hearing on May 15, 2013, the People tendered a "Combined Report of In-

---

1. *See People v. Richards*, 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

vestigation" and Respondent's prior disciplinary history, and the Court heard testimony from Respondent.[2]

### III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

 The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[3] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 22, 1990, under attorney registration number 20023.[4] He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[5]

#### Johnson Matter

Dr. Benjamin Johnson hired Respondent to represent him with regards to several patent applications. Johnson expected Respondent to apprise him of developments or issues concerning his applications.

Sometime in 2011, Johnson began experiencing problems contacting Respondent. Johnson then hired attorney Mark Trenner to handle his intellectual property matters. Trenner had great difficulty in communicating with Respondent but eventually received Johnson's patent application files and access to the United States Patent and Trademark Office ("USPTO"), where Johnson's patent applications were pending.

Trenner discovered that Johnson had ten pending patent applications, all of which were deemed abandoned during the time Respondent represented Johnson. Respondent admitted via affidavit that his failure to maintain his docketing system had directly led to the finding of abandonment. Respondent, however, never told Johnson that his applications had been abandoned. When the People contacted Respondent during their investigation to request information regarding this matter, he failed to answer their letters or participate in the investigation.

In this matter, Respondent violated Colo. RPC 1.3, which requires a lawyer to act with reasonable diligence and promptness when representing a client. He also violated Colo. RPC 1.4(a)(3), which mandates that lawyers keep their clients reasonably informed about the status of their matters. He further violated Colo. RPC 8.1(b), which requires a lawyer to respond to lawful demands for information from the People.

#### Poumay Matter

As Johnson had done, Michael Poumay hired Respondent to assist him with intellectual property matters, specifically, to file a federal trademark registration application for Poumay's company, Michael's Corner LLC. On July 28, 2011, Respondent emailed Lindsey Nicholson, an attorney working for Poumay, a purported receipt of Poumay's trademark application filing. In that same email, Respondent stated that he expected to hear from the USPTO regarding the application in approximately three months. Attached was an invoice for $500.00, which included $325.00 for the USPTO filing fee and $175.00 for Respondent's legal fees. Nicholson paid the invoice in full on July 29, 2011.

Thereafter, neither Poumay nor Nicholson heard from Respondent. From November 2011 to January 2012, Nicholson attempted to communicate with Respondent about the status of Poumay's trademark application. Respondent never responded to Nicholson's correspondence.

On January 10, 2012, Nicholson entered into the USPTO website the serial number on the receipt Respondent previously gave her. She discovered that the serial number did not refer to Poumay's trademark application but instead belonged to an unrelated application filed by a different attorney. She immediately emailed Respondent, who responded within the hour, asserting that he had no intention to defraud anyone and that

---

2. Other than testifying at the sanctions hearing, Respondent failed to participate in the disciplinary proceeding.

3. *See* the People's complaint for further detailed findings of fact.

4. Respondent's registered business address is 679 2nd Avenue, #11C, Durango, Colorado 81301.

5. *See* C.R.C.P. 251.1(b).

any errors were inadvertent. He insisted that he had misfiled the application. Respondent also told Nicholson that he would return all fees and re-file Poumay's trademark application at his own expense. However, Respondent did not refund any money or contact Nicholson again. Nicholson was able to re-file Poumay's application, but her client was harmed by the delay.

In January, February, and May 2012, the People sent Respondent letters requesting information responsive to Nicholson's complaints. Respondent failed to respond to the letters and to participate in the investigation of this case.

Respondent violated Colo. RPC 1.1, which requires a lawyer to provide competent representation to a client. As in the Johnson representation, Respondent violated Colo. RPC 1.3 by failing to correct errors he made in filing Poumay's trademark application; Colo. RPC 1.4(a)(3) by failing to keep Poumay informed about his trademark application; and Colo. RPC 8.1(b) by failing to respond to the People's repeated requests for information. Respondent also violated Colo. RPC 1.16(d), which requires a lawyer to return a client's papers and property upon termination of a representation. Finally, by providing a false USPTO receipt and retaining Poumay's $500.00 payment without having earned those funds or conferred a benefit upon him, Respondent violated Colo. RPC 8.4(c), which proscribes dishonest conduct.

### Thomas Matter

In 2006, Jeff Thomas, an attorney, hired Respondent to prosecute a patent application on his behalf. Respondent filed the patent application with the USPTO on February 6, 2007. Thomas's application remained pending through 2011. On August 22, 2011, Respondent sent Thomas an email indicating that the USPTO had approved the patent claims, but Thomas needed to pay a $755.00 patent issuance fee and had to decide whether to file a continuation to prosecute broader patent claims. In that same email, Respondent stated that the patent would issue approximately six weeks after payment of the issuance fee.

Thomas sent Respondent an email stating that he would send a $1,500.00 check to cover the issuance fee and outstanding attorney's fees. On September 1, 2011, Thomas paid that sum through his bank's online bill payment system. Respondent negotiated the check the same day.

Thomas then waited several weeks for Respondent to contact him about the issuance of the patent and the continuation claims. Hearing nothing from Respondent, Thomas attempted to contact him. On October 1 and 19, 2011, Thomas left Respondent several voicemail messages and sent emails requesting an update on his claims. Respondent finally responded on October 22, 2011, stating that he was on an extended camping trip but would provide a draft of the continuation claims later that day.

Throughout October and November 2011, Thomas repeatedly contacted Respondent requesting information on the status of the patent and the continuation claims. Respondent assured Thomas that everything "was all good" and that "he would get back to" Thomas. Thomas sent Respondent an email on November 8, 2011, requesting a return telephone call the next day. Respondent left Thomas a voicemail message on November 9, 2011, maintaining that he accidently paid Thomas's $755.00 issuance fee for someone else's application but had fixed the problem.

Thomas then sent Respondent three emails on December 1, 14, and 15, 2011, respectfully, requesting an update on his matter. He spoke with Respondent in late December, this time requesting specific documentation showing when the issuance fee was paid. He also asked Respondent when he could expect a draft of the continuation claims and a timeframe for the patent issuance. At that point, Respondent admitted that he had not paid the issuance fee in September or November 2011, even though he previously indicated the problem had been fixed during that period. He now claimed he had paid the issuance fee just one week prior to their conversation, in late December 2011.

In January 2012, Thomas again attempted to reach Respondent several times by email and telephone. He continued to request documentation of the issuance fee payment.

That same month, Respondent emailed Thomas, attaching a purported receipt for the issuance fee. Yet the receipt contained a September 2011 date, which Thomas knew to be inaccurate. Thomas then emailed Respondent, asking for him to call immediately. Respondent did not call and instead sent Thomas an email, stating that Thomas's patent applications were in good order and that the patent should issue in a few weeks. Thomas thanked Respondent for paying the required fees and correcting any outstanding issues.

Soon thereafter, Thomas received a phone call from an USPTO representative who indicated that the issuance fee had not been paid because Thomas did not have a valid credit card on file. Thomas immediately contacted Respondent to request the return of the $755.00. On January 25, 2012, Thomas paid the issuance fee, which had risen to $870.00 because of late fees.

After consulting with another patent attorney, Thomas discovered he could access the USPTO website to check on the status of his patent application. There, he discovered that his patent was deemed abandoned in November 2007 (which Respondent had corrected) and again in September 2011. He also learned that Respondent had never filed the continuation claims. Respondent refused to refund to Thomas the $755.00 and never communicated with Thomas again.

During the course of their investigation, the People requested information from Respondent in February, April, and May 2012, regarding Thomas's complaints. Respondent neither responded to these requests nor participated in the investigation of this matter.

In this representation, Respondent violated Colo. RPC 1.1 when he failed to pay the issuance fee and the continuation claims. He also violated Colo. RPC 1.4(a) when he did not keep Thomas reasonably informed about the status of his case between September 2011 and January 2012. When Respondent misled Thomas into believing he had filed the

continuation claims and paid the issuance fee on two occasions when he knew he had not, he violated Colo. RPC 8.4(c). Respondent also violated this same rule by knowingly converting the $755.00 fee from Thomas. Further, Respondent failed to return these funds to Thomas, thereby violating Colo. RPC 1.16(d). Finally, Respondent violated Colo. RPC 8.1(b) by failing to respond to the People's repeated requests for information related to his disciplinary investigation.

## IV. SANCTIONS

 The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[6] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Respondent violated a duty to his clients by failing to pursue their matters diligently, providing inadequate communication, and converting client funds.[7] Respondent also violated the duty he owes to the legal profession by refusing to participate in the People's disciplinary investigation.

*Mental State:* The complaint explicitly establishes that Respondent knowingly committed the rule violations charged in the complaint, including conversion of his clients' funds, failure to perform agreed-upon services, and failure to respond to his clients' efforts to communicate with him. Respondent therefore knowingly engaged in a pattern of abandonment and conversion.

*Injury:* Respondent seriously harmed his clients. His inaction and obfuscation directly

6. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

7. *See* ABA *Standard* 4.0. Although the ABA *Standards* suggest that a violation of Colo. RPC 1.16(d) is a violation of a duty owed as a profes-

sional, the Court finds that failure to return a client's property can also accurately be characterized as a violation of a duty owed to clients.

resulted in the abandonment of his clients' many patent applications. Respondent also harmed Poumay and Thomas by knowingly converting their funds.

## ABA *Standards* 4.0–7.0—Presumptive Sanction

Disbarment is the presumptive sanction under ABA *Standard* 4.11 when a lawyer knowingly converts client property and thereby harms a client. Likewise, ABA *Standard* 4.41 calls for disbarment when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

## ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[8] The Court considered evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction.

*Prior Disciplinary Offenses—9.22(a):* Respondent has a history of prior discipline. In case number 10PDJ120, Respondent was suspended for a period of thirty days, all stayed upon the successful completion of a two-year period of probation, for signing and submitting five checks to the USPTO that were returned due to insufficient funds. In case number 11PDJ090, Respondent was suspended for three months, with conditions, for failing to pay filing fees for two patent applications, leading to a finding that the client's applications had been abandoned. He then failed to pay the maintenance fees on his client's other patents, causing some to be deemed abandoned. Respondent also did not respond to a request from the USPTO for information, resulting in an abandonment of another patent application for a different client. Respondent has not filed for reinstatement from his suspension.

*Dishonest or Selfish Motive—9.22(b):* Respondent's decision to convert his clients' funds was motivated by a dishonest and selfish motive.

*Pattern of Misconduct—9.22(c):* Respondent engaged in a pattern of abandonment and conversion in more than one client matter during the same general timeframe, demonstrating a pattern of misconduct.[9] His misconduct is also the same type of misconduct that his prior discipline addressed.

*Multiple Offenses—9.22(d):* Respondent engaged in several types of misconduct, including inadequate communication, lack of diligence, and dishonesty.

*Indifference to Making Restitution—9.22(j):* Respondent has made no efforts to restore the funds he knowingly converted from his clients.

*Personal or Emotional Problems—9.32(c):* Respondent testified at the hearing that he suffered from undiagnosed emotional problems at the time of his misconduct.[10] He was later diagnosed with clinical depression and anxiety. Respondent further testified that these problems "greatly affected" his ability to practice law and to respond to the People's requests for information. He stated that he subsequently sought psychiatric treatment and quit practicing law. He stated that he has no plans to practice in the future and recognized that if he were to return to the practice of law, he would need to continue treatment by a psychiatrist.

---

**8.** *See* ABA *Standards* 9.21 & 9.31.

**9.** *See People v. Sather,* 936 P.2d 576, 579 (Colo. 1997) (accepting a conditional admission of misconduct and stating that a letter of admonition issued the previous year was "evidence of a pattern of misconduct" under ABA *Standard* 9.22(c) because it "concern[ed] events apparently occurring during the same time period as in this case"); *In re Reardon,* 759 A.2d 568, 577 (Del. 2000) ("A pattern may be discerned from two or more recognizably consistent acts that serve as a predictor of future misconduct.").

**10.** This testimony is corroborated by a letter Respondent sent to the People on November 1, 2012, in which he states he suffers from "depression and anxiety disorders, which spiraled out of control over the last five years, culminating in a breakdown about two years ago." *See* November 1, 2012, letter from Respondent attached to "Combined Report of Investigation."

*Remorse—9.32(l):* Respondent testified that he recognizes his mistakes and is "truly regretful" for his actions over the past few years. He also regrets not being diagnosed with clinical depression and anxiety at an earlier time during his career and continuing to practice law when he was unable. While Respondent expressed remorse about failing to timely seek psychiatric treatment and of his misconduct in general, he refused to recognize that he abandoned his clients, stating he was always available to them until they discharged his services. As such, the Court accords minimal weight to this factor.

### Analysis under ABA *Standards* and Colorado Case Law

The aggravating factors in this case greatly outweigh the mitigating factors, and ABA *Standard* 9.0 therefore counsels that the Court impose the presumptive sanction of disbarment.

Colorado case law also identifies disbarment as the appropriate sanction when a lawyer knowingly converts client funds, absent significant mitigation.[11] For instance, in *People v. Kuntz*, the Colorado Supreme Court determined disbarment was appropriate when a lawyer accepted legal fees from several clients, performed little work on their cases, and then abandoned them without returning their fees.[12] Likewise, in *In re Stevenson*, a lawyer was disbarred after abandoning his client and misappropriating funds.[13] The lawyer's failure to participate in the disciplinary proceeding in *Stevenson* underscored the Colorado Supreme Court's conclusion that disbarment was appropriate.[14]

In sum, given the aggravating factors, scarcity of mitigating factors, relevant Colorado Supreme Court case law, and Respondent's failure to meaningfully participate in this case, the presumptive sanction of disbarment is clearly warranted here.

## V. CONCLUSION

Respondent violated his duties to his clients by failing to diligently represent them, neglecting to communicate with them, making misrepresentations, and converting fees. This serious misconduct calls for disbarment.

## VI. ORDER

The Court therefore **ORDERS:**

1. **GLENN L. WEBB,** attorney registration number 20023, is **DISBARRED.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment."[15]

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before Friday, July 5, 2013.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within seven days, unless otherwise ordered by the Court.

3. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a statement of costs **on or before Thursday, June 20, 2013.** Respondent **SHALL** file his response to

**11.** *In re Haines,* 177 P.3d 1239, 1250 (Colo. 2008); *see also In re Cleland,* 2 P.3d 700, 703 (Colo.2000) (determining that knowing misappropriation of client funds warrants disbarment); *People v. Varallo,* 913 P.2d 1, 10–11 (Colo.1996) (holding that disbarment is the appropriate sanction for knowing conversion of client funds, regardless of whether the lawyer intended to permanently deprive the client of those funds).

**12.** 942 P.2d 1206, 1208 (Colo.1997); *see also People v. Roybal,* 949 P.2d 993, 998 (Colo.1997) (disbarring attorney for abandoning clients, failing to return unearned fees, and engaging in

conduct involving dishonesty, fraud, deceit, or misrepresentation).

**13.** 979 P.2d 1043, 1044 (Colo.1999).

**14.** *Id.* at 1045.

**15.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

the People's statement, if any, within fourteen days.